MORGAN et ux, Respondents v. REASER et ux, Appellants

(204 N.W.2d 98)

(File Nos. 10874, 10893. Opinion filed February 2, 1973)

Order denying petition for rehearing March 12, 1973

George Beal, Rapid City, for plaintiffs and respondents.

Horace R. Jackson of Whiting, Lynn, Jackson, Freiberg & Shultz, Rapid City, for defendants and appellants.

PER CURIAM.

This is an action by plaintiffs for specific performance of a contract for deed. The defendants answered and counterclaimed praying for rescission of the contract. The trial court granted specific performance and the defendants appeal. Plaintiffs cross-appeal from the formula adopted by the court computing plaintiffs' damages for deprivation of possession. From a transcript of over a thousand pages and many exhibits, this opinion attempts to condense the facts involved. For the purpose of clarity it is noted that Lloyd U. and Blanche V. Morgan are referred to throughout the opinion as the plaintiffs or the Morgans except where the wife was not involved, and Lloyd U. Morgan is then referred to as the plaintiff or as "Morgan". The same is true with respect to the defendants.

## HISTORY OF DEFENDANTS' RANCH

The subject of the action for specific performance is a 3,362-acre ranch in Pennington County. Defendants purchased this ranch on March 1, 1963, for $169,500 from William and Cora Lehman, paying $20,000 down, $22,500 at time of possession and the balance on a contract for deed payable $8,466.66 per year commencing on April 1, 1964, plus 5% interest per annum from April 1, 1963. On February 14, 1966, there was a balance due on this contract of approximately $110,000, plus 5% interest from April 1, 1963. On November 11, 1965, the defendants listed the ranch for sale with a real estate broker in Rapid City for $252,000. Late in January 1966, James

Ness, another real estate broker in Rapid City, came to defendant with an offer from plaintiff to buy the ranch, fixing its value at $228,000; the buyer to pay $50,000 in cash, assume the balance on the Lehman contract of "approximately $110,000.00" and give a note in the amount of $68,000 for the balance of the purchase price, secured by a second mortgage on an apartment house in California.

## HISTORY OF "WHISPERING SANDS"

The California apartment house turned out to be an apartment complex located at Palm Desert, California, called "Whispering Sands". It consisted of 22 one-story apartments, carports, storage rooms, laundry room, swimming pool and landscaping. Whispering Sands was constructed by plaintiff Morgan and his partner Clifford L. Brown. Construction was commenced in December 1963. The cost was: land $51,912.54, construction contract $301,687, architect $15,000, painting $2,559.20, and landscaping $2,754.25, making a total of $373,912.99. In addition, nine units were furnished at a cost of approximately $41,791.87, making a total cost of $415,704.86. The construction was completed in the fall of 1964. From April 1, 1965, to March 1, 1966, the place was operated by Mrs. Crawley, as manager. Gross income realized under her management during this period was $17,154.53.

Brown and Morgan financed the construction with a loan from the Sterling Savings and Loan Association of Palm Desert in the amount of $297,000. Installment payments on the loan, including principal and interest were $2,058 per month, or an annual total of $24,696. During its first year of operation payments on the deed of trust exceeded the gross income by $7,541.47. The operating overhead was fixed by plaintiff and his partner at $500 per month, therefore, the approximate net loss on the first year's operation, including taxes, was in excess of $17,500.

On October 19, 1964, Whispering Sands was appraised by Herbert H. Foster, a member of the American Institute of Real Estate Appraisers who had been awarded the M.A.I. designation

in 1955. Mr. Foster, in a letter dated October 19, 1964,[1] addressed to George A. Brown, indicated that Whispering Sands on that date had a current market value of $310,000. Mr. Foster also testified that the fair market value of Whispering Sands on February 14, 1966, was $310,000 based on the property's assumed future income potential.

On November 19, 1965, Brown and plaintiff by written agreement dissolved their partnership in Whispering Sands. Brown, in the agreement, admitted a loss in the venture and conveyed all of his interest in Whispering Sands to the plaintiff for which the plaintiff paid nothing. This agreement contained the following statement:

> "The parties hereto mutually acknowledge that each has investigated the facts and circumstances surrounding the property and business aforesaid, and, notwithstanding the fact that Morgan has more actively, and closely, personally followed said property and its circumstances, each party represents that his knowledge thereof is equal to the knowledge possessed by the other

---

1. Foster set the value from a cost approach at $368,000, and in the letter to Brown of October 19, 1964, states:

   "The income does not appear to support the value indicated by the Cost Approach. Based on my investigations and upon my experience, it is my opinion that, currently, apartments in the Palm Desert area will not sell for more than seven times the Gross Income.

   "Four of the apartments are now rented at $175. per month. One apartment is reserved for the manager. If the available 21 apartments brought $175. per month, the gross income would be (21 x $175. x 12) = $44,100. The indicated Market Value then is (7 x $44,100.) = $308,700., round to $310,000.

   "I checked the $175. per month with other apartment rent schedules in the Palm Desert area and found it to be realistic. I therefore concluded that, since this is income property, its Market Value should be based on its income potential.

   "From these considerations, I reached the conclusion that the current Market Value of Subject Property is $310,000. "It is also my opinion that, under good management, the gross income of Subject Property can be built-up to around $50,000. per year. The income, then, would indicate a Market Value of $350,000.

   "This is more in line with the value indicated by the Cost Approach. However, that situation does not obtain at this time, making a value of $350,000. conjectural, and a future possibility."

party. Further, this acknowledgment is mutually uttered for the purpose of avoiding any claim by either party as against the other by way of contended over-reaching, concealment, secretiveness, fraud (constructive or actual) or other breach of duty owed, or contended for, one to the other."

Exhibit A attached to the dissolution agreement referred to above shows that Whispering Sands was seriously in debt. The outstanding obligations as of October 8, 1965, were listed as follows:

"American National Bank & Trust Company
| | | |
|---|---|---|
| of Rapid City (Approximately) | $62,000.00 | plus interest |
| Albert Parvin & Co. (furniture) | 5,617.27 | plus interest |
| Bank of California (drapes and carpet) | 8,334.54 | |
| Sterling Savings & Loan | 289,467.17 | plus interest |
| Morris Elkind (2nd) | 30,000.00 | plus interest from 9-1-64 |
| Bleecker (lawsuit) (claim approximately) | 14,000.00[2] | |
| Iverson (lawsuit) (claim approximately) | 4,000.00[3] | |
| Fitzgerald & Jacobs, Attorneys (Riverside) | unknown | |
| Taxes (approximately) | 4,200.00 | |
| Howard Kluthe—Liability insurance (approximately) | 300.00 | |
| Operating overhead (Utilities, etc. approximately) | 500.00 | per month |
| Waggener Air Conditioning—repair | 49.50 | |
| J. M. Costello—Attorney | unknown" | |

As a result of plaintiffs' offer through Ness, defendant had a conversation with plaintiff at his home on the day after plaintiff's release from the hospital. The day after this meeting the defendant and Ness were flown to California in plaintiff's airplane to inspect Whispering Sands, all at plaintiff's expense. Ness spent some time going over the accounts of the business and

---

2. While Whispering Sands was under construction the property was sold. Bleecker, one of the buyers, subsequently brought action to rescind and demanded a return of the down payment. The case was settled prior to the trial of this case.

3. The Iverson mentioned here filed a lien against Whispering Sands and claimed Brown and Morgan were indebted to him for a balance due on a commission for obtaining the real estate on which Whispering Sands was built. The claim was settled prior to the trial. Subsequently Iverson testified for Morgan as to the value of Whispering Sands at the trial.

obligations with the manager. Defendant did not participate in these conversations as at that time he had been offered and so far as he knew was to obtain a second mortgage on Whispering Sands. Defendant heard and saw exactly what Ness wanted him to see and hear.

During the defendant's absence in California, plaintiff contacted his attorney, Costello, and was referred to attorney Brady because of a conflict of interest. Plaintiff arranged an appointment with attorney Brady for himself, the defendant and Ness for February 8, 1966. The three met as arranged and the transaction was discussed in detail. Despite attorney Brady's protests to the contrary that he was merely a scrivener in the negotiations, because of the manner in which the exchange of equities was agreed to all slanted in favor of the plaintiffs, Brady was in fact the Morgans' attorney and proceeded as Morgan directed.

The exchange was finalized by means of three documents, viz:

(a) A contract for deed, dated February 14, 1966, by which plaintiffs purchased defendants' ranch for $238,000, with $40,000 cash payment and assumption of a contract for deed held by Lehmans on the ranch on which there was a balance due of $110,500. The balance of $87,500 was to be defendants' down payment on the purchase of Whispering Sands, with possession June 1, 1966. The sale was dependent on Lehmans consenting thereto.

(b) A contract for deed dated February 14, 1966, wherein plaintiffs sold to defendants Whispering Sands for $390,000. Defendants received a credit upon the purchase price in the amount of $87,500 for their equity in the ranch. The balance was paid by defendants assuming the balance due on the deed of trust to Sterling Savings and Loan in the amount of $302,500. Possession as of March 1, 1966. The actual amount due on the mortgage on February 14, 1966, was $288,061.67, with two installments of $2,058 each unpaid and delinquent. The Morgans intended to borrow an additional sum from Sterling and thereby

increase the amount of the mortgage to the $302,500 figure. Sterling refused to increase the loan. Morgan then prevailed on Reaser to co-sign a note at a local bank for $15,500, the proceeds of which the Morgans received.

(c) A contract for deed dated February 14, 1966, whereby defendants sold to James E. and Luella I. Ness their interest in Whispering Sands for $390,000 to be paid by Ness assuming the $302,500 mortgage, commencing March 1, 1966, and the balance of $87,500 to be secured by a second mortgage to be paid in monthly installments of $800 per month commencing February 1, 1967. Possession to be given March 1, 1966. The $15,500 referred to in (b) above was added to the $87,500, making a total of $103,000 secured by a second trust deed on Whispering Sands. The Reasers received a note from the Nesses in this amount. This note bore interest at 6% per annum, payable in installments on principal and interest of $737.50 per month beginning on April 1, 1966, and continuing through January 1, 1967, and $1,100 per month on February 1, 1967, through April 1, 1971, and thereafter payable at $800 or more on the first day of each calendar month commencing May 1, 1971, until January 1, 1977, with the entire unpaid balance due at that time.

Ness intended to charge a commission as the real estate broker to both the plaintiffs and defendants. The amount of the commission is not shown by the evidence, but on a $628,000 transaction such commission naturally would be sizable. He agreed, however, if the deal was handled in the manner which it was and he ended up as the owner, no commission would be charged. The defendants only wanted and expected to receive a second mortgage, and this is what he got but not from the plaintiffs. Ness already owed Reaser $10,000 on another deal that he could not pay and Reaser thought he might recover this amount if Ness managed Whispering Sands. As to the commission, the plaintiffs stood to gain more by this arrangement than the defendants. Actually Ness was the only one that did gain from the transaction.

Ness went into possession of Whispering Sands and commenced operating the same on the 1st of March 1966. In a letter dated April 26, 1966, Ness notified defendant that the property

was not all that it was represented to be and that the property had no prospect of paying its way. In May 1966, defendant received notice from Sterling Savings and Loan that the trust deed was two payments delinquent. The defendant again went to Palm Desert and brought the loan up to date by payment of two installments and a late charge of $205.80, totaling $4,311. The $40,000 was not tendered to defendants on June 1, 1966, by the plaintiffs. Plaintiffs excuse this for the reason that Lehmans' consent had not been obtained for the assignment of the contract for deed although plaintiff led defendant to believe that plaintiffs' attorney would obtain such consent. On June 24, 1966, plaintiffs brought action for specific performance. Defendants counter-claimed for rescission. Sterling commenced foreclosure of the trust deed on October 11, 1966.

Between March 1, 1966, and up to the middle of November, 1966, while managed and operated by the Nesses, gross income of $20,835.41 was realized from operations of Whispering Sands or an average of $2,315 per month—$257 per month over the $2,058 per month due on the trust deed. By reason of other expenses such as routine overhead and taxes, the business went in the red during this period at approximately $1,200 per month. The Nesses during that period made payments only for the months of June and July 1966, on the installments due to Sterling and have paid nothing to the defendants.

The trial court found affirmatively as to plaintiffs' prayer for specific performance (1) that the defendants received an adequate consideration for their contract which was just and reasonable; (2) that defendants understood the agreements and their consent was not obtained by misrepresentation, concealment or mistake; as to defendants' prayer for rescission that plaintiffs had fully performed or were capable of being compelled to specifically perform their only remaining obligation to pay the agreed possession date payment of $40,000 on the purchase price of defendants' ranch.

We conclude the findings, briefly outlined above, are clearly erroneous.

SDCL 21-9-3 provides as to parts pertinent to the question in this case as follows:

"Specific performance cannot be enforced against a party to a contract in any of the following cases:

(1) If he has not received an adequate consideration for the contract;

(2) If it is not, as to him, just and reasonable;

(3) If his assent was obtained by misrepresentation, concealment, circumvention, or unfair practice of any party * * *."

What consideration did the Reasers receive for the sale of their ranch? A promissory note for $103,000 signed by Morgan's real estate agent, James Ness and wife, and secured by a second trust deed on property in California already encumbered by a first trust deed almost equal to or greater than the value of the property. There is no evidence that James Ness or his wife have the financial means to pay this note or any part thereof, or ever intended to make such payment. On the contrary the evidence indicates that the note by itself was at all times worthless. The answer to the question of what Reasers received for the sale of the ranch is "nothing".

The trial court made no specific finding as to the value of Whispering Sands on February 14, 1966, but states, "One appraiser valued the property at Four Hundred Thirty-five Thousand Dollars ($435,000.00); another at Three Hundred Ten Thousand Dollars ($310,000.00)". Norman M. Iverson, a real estate dealer of Orange, California, called by the plaintiff to testify as an expert on value, expressed the opinion that Whispering Sands on February 14, 1966, had a fair market value of $435,500.00. It was brought out on cross-examination that his opinion was based on replacement costs which are not pertinent to the issue. This case involves an investment in income property, not a construction contract. The fact that Morgan paid $125,000 more in constructing Whispering Sands than its income yield could bear does not add to his right to pass the loss to an uninformed and naive investor.

The actual value of Whispering Sands on February 14, 1966, is crucial in arriving at the question of "adequate consideration". Foster's appraisal made in 1964, long before the sale to defendants was contemplated, and testified by him as being of the same value on February 14, 1966, was performed and completed by the most scientific method of modern appraisals, unhampered by any personal interest in the result, completely professional and neutral in all aspects and made by an appraiser of unimpeachable qualifications, with many years experience as an appraiser in this area.

Reaser first listed his ranch for sale at $252,000. In plaintiff's original offer to buy plaintiff fixed the price at $228,000 with a cash down payment of $50,000. The final contract between the parties ended with a price of $238,000 with a down payment of $40,000. Defendant was not satisfied with the price of $228,000 and plaintiff agreed to pay $10,000 more but lowered the cash payment by $10,000 thereby saving himself $10,000 on the deal and satisfying the defendant, who now thought he was getting a better price. Plaintiff couldn't lose on the increase when it was very questionable if he had any marketable equity in Whispering Sands as of February 14, 1966, whatsoever, and what equity he had was not in the foreseeable future.

The entire transaction as to Reaser was inequitable, unjust and unreasonable. Reaser had no experience in the purchase of apartment houses in California or otherwise, in the method of computing the value of an apartment house based on the return on invested capital or in trading equities in real estate and had insufficient capital to promote a losing business as plaintiffs knew.

The Morgans were aware of the value or lack of value of Whispering Sands as an income investment. The Morgans knew and Ness should have known that the property during its first year of operation went in the red in excess of $17,000 and that it might be years, if ever, before the income from the operation would break even with the installment payments on the trust deed and cost of operation plus the severe depreciation on the furnishings which would mean the owner would necessarily stand to lose another $50,000 on his own capital to keep the place in

operation. This future loss more than offsets Morgans' paper equity of $23,000. This was not explained to the defendant; in fact it was concealed from him. The Morgans also knew that no informed investor would purchase an apartment house in the $300,000 price range without a fair and impartial appraisement by a qualified appraiser. But this was not to plaintiffs' advantage and would have surely ruined their plan to get the Reaser ranch for $110,000 plus $40,000 cash, or a total $150,000 being $20,000 less than defendants originally paid for the ranch; in addition they would get rid of their insolvent operation in California and made defendants liable for a deficiency if any on the Sterling loan.

Morgan admitted in his testimony having made the following statements as to the value of Whispering Sands:

"Q All right.

To the best of your recollection will you tell the court what you told them regarding—with reference to any statements that you made to Mr. Reaser regarding the evaluation of the Whispering Sands?

A I told them that in 1963 the Sterling Savings and Loan had told me they made their appraisal of the place from Five to Five-thirty, when it is completely finished and furnished, Five to Five-thirty-five."

James Ness testified:

"Mr. Morgan implicitly stated that he had an M.A.I. appraisal on The Whispering Sands here in California of $535,000."

Counsel asked Reaser the following question: "what did Morgan say about any evaluation or appraisal of the Whispering Sands?", to which defendant testified, "Well, he said there was a certified appraisal of Five Hundred Thirty-five Thousand ($535,000.00) Dollars and that the apartments were renting for Four Hundred ($400.00) Dollars a month."

Attorney Brady's testimony corroborates the testimony of both the defendant and James Ness as to the representation of the value of Whispering Sands by the plaintiff. Brady's testimony also establishes that the contracts were drawn by him under the direction of the plaintiff.

Defendant relied on the plaintiff's representation, although a preconstruction loan value appraisal bears no materiality to the value of an existing structure, based on the return of invested capital. It is, on the other hand, difficult to conceive of an experienced real estate broker like Ness being misled by Morgan's statement. Ness, however, was interested in obtaining Whispering Sands for himself and obtaining defendants' ranch for the plaintiff. Ness did nothing prior to February 14, 1966, to ascertain the value of Whispering Sands for investment purposes and if he did know the true value he did not make it known to the defendant.

On the record specific performance must be denied and rescission granted. SDCL 53-11-2 provides in part as follows:

"(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or if any other party to the contract jointly interested with such party;

"(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part; * * *

"(4) If such consideration before it is rendered to him fails in a material respect from any cause; or * * *."

Defendant Reaser was not without some experience in the purchase and sale of real estate nor was he completely lacking in understanding. However, the evidence discloses that this Pennington County rancher was without understanding of a transaction

of this nature and magnitude. There is such a lack of competency on the part of the defendants as to have made it necessary that they should have had protection and advice; these facts coupled with the circumstances that the Reasers were misled as to the value of Whispering Sands, and that they, in effect, were actually giving their ranch away is sufficient in our opinion to constitute constructive fraud. See Orr v. Allen, 73 S.D. 547, 45 N.W.2d 737.

SDCL 53-11-5 provides:

"The party rescinding a contract must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

On March 31, 1966, plaintiff paid $8,500 to defendants to cover the installment payment due April 1, 1966, on the contract for deed between Lehmans and defendants. This is to defendants' credit. On the other hand defendant made two installment payments out of his own pocket on the Sterling loan which amount, plus the late payment charge, total $4,311, plus interest at 6% should be deducted from the $8,500 payment with interest at 6% and the balance paid to plaintiffs by defendants.

On the theory that the Nesses' promissory note in the amount of $103,000 is worth as much now as when defendants received it and in view of plaintiffs' contention of adequate consideration, defendants should assign this note to plaintiffs without recourse.

Reversed and remanded to enter judgment in accord with this opinion.

HANSON and WINANS, JJ., and FOSHEIM, Circuit Judge, concur.

BIEGELMEIER, P. J., and WOLLMAN, J., concur by opinion.

FOSHEIM, Circuit Judge, sitting for DOYLE J., disqualified.

BIEGELMEIER, Presiding Justice, and WOLLMAN, Justice, concurring.

From this voluminous record, which is difficult to cover within the compass of an opinion, we agree, as the court concludes, that the judgment should be reversed and the action remanded to the trial court with directions to enter a judgment granting defendants rescission of their contract upon the assignment without recourse of the Ness note to plaintiffs and payment to plaintiffs of the $8,500 installment payment made by plaintiffs, less the $4,311 payment made by defendants.